



SEP 27 2019

CHRISTOPHER M. DeTORO, Clerk
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

**FILED**

SEP 27 2019

CHRISTOPHER M. DeTORO, Clerk
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA

In Re:
**JOHN MILEUSNIC**
Debtor

Chapter **13**Proceedings

Case No.**19-20831 JRA**

**RESPONSE TO TRUSTEES OBJECTION TO CONFIRMATION OF AMENDED PLAN**

**AND**

**OBJECTION TO TRUSTEES MOTION TO DISMISS FOR DEFAULT IN PLAN PAYMENTS**

**AND**

**DEBTORS REQUEST FOR ASSIGNMENT / ACCOUNTING FROM PENNYMAC**

Comes now JOHN MILEUSNIC Debtor herein, and (1) RESPONDS to objection to confirmation of the Debtor's Amended Plan filed on August 28, 2019 (2) Objects to "Motion to Dismiss for Default in Plan Payments" "Re: Debtor's Amended Plan" filed on August 28, 2019, and (3) REQUESTS FOR ASSIGNMENT / ACCOUNTING FROM PENNYMAC in support thereof, states as follows:

1. Debtor filed an Amended Plan on August 28,2019.

2. Debtor has served the Amended Plan on all creditors and; therefore, the Amended Plan may be confirmed.

   **a.** Another copy of fax / email /letter to Capital One is attached **[ Exhibit F]**.

3. The monthly payment to Capital One need NOT be increased in order for the claim to be paid out over time. The current

value of vehicle is $6000, which Debtor is assuming and will pay $100 for 60 months.

4. Capital One, is Auto loan provider, under notice **[ Exhibit attached F]** is not misclassified.

5. Debtor's Amended Plan DOES NOT fail to provide for the pre-petition mortgage arrears to PennyMac or the post-petition fees due to PennyMac as the debt is in **DISPUTE.**

6. Paragraph 5.1 of Debtor's Amended Plan is **NOT** difficult to administer in that every single box is checked.

7. Therefore, it is **NOT** difficult to administer a specific dividend of $7,065.87, while the Amended Plan also reflects that a zero ($0) dividend will be paid.

8. Yes, Part 2.3 of Debtor's Amended Plan does not provide that the income tax refunds will be used as an additional dividend to unsecured creditors, as Debtor:

   a. is not sure if he will get IRS refunds

   b. intends to keep it for his medicines and other incidental old age expenses.

9. Yes, Part 4.2 of Debtor's Amended Plan does not provide the statutory Trustee fees.

   a. Debtor receives $1700 as Social Security and is in NO Position to pay Trustee.

   b. If Court Orders, Debtor if willing to pay directly to Creditors.

10.     Proof of Claim was due by 06/13/2019.

11.     On or about 05/28/2019, PennyMac filed an "Objection to plan" [Doc 18 of Docket] **NOT** "Proof of Claim", naming creditor "PennyMac", an entity out of multiple different entities given in schedule E/F Debtors' original petition. EXHIBIT **"A"**[1]

> *"PennyMac Loan Services, LLC **will be filing its Proof of Claim** setting forth an approximate total pre-petition arrearage of **$123,443.51** and an approximate total secured debt of **$309,670.53**. The Proof of Claim will further sets forth the current monthly mortgage payments due on the first day of each month of **$1,585.51.**"*

12.     In the same document PennyMac Loan Services, LLC claimed:

> *"PennyMac Loan Services, LLC holds a **validly perfected mortgage** on the property located at 325 Plum Creek Dr, Schererville, IN 46375-1166."*

13.     Assuming it to be true and intention of PennyMac, based on that objection to original Ch-13 plan, Debtor filed an Amended Plan on August 28,2019.

14.     On 08/07/2019 two months after the date of filing an Objection to plan [Docket 18] PennyMac filed [Docket 33] **MOTION TO DISMISS**[2]. EXHIBIT **"B"**[3]

---

[1] Doc 18 Filed 05.28.19 Penny Objection to Plan
[2] This was replied by Debtor [DOC 37 Aug 20, 2019] and is still pending before this Court
[3] Doc 33 Filed 08.07.19 Penny Motion to Dismiss

15.     The Court should note that till date PennyMac[4] has **NOT FILED A PROOF OF CLAIM** and has till date failed to come up with exact **ASSIGNMENT / ACCOUNTING** as detailed below in its two filings:

  *i. pre-petition arrearage of **$123,443.51** and an approximate total secured debt of **$309,670.53**.*

  *ii. a principal outstanding balance of **$205,175.37**.*

  iii. *in the original principal sum of **$209,494.00***.

16. "John" requests the Court to disallow the creditors'[5] claim. ***In re Henry, 311 B.R. 813*** (Bankr.W.D.Wash.2004).

  In Henry, the debtors' objections asserted that the proofs of claim lacked sufficient documentation under Rule 3001(c) and requested that the court enter an order striking the filed claims but permitting the creditors 30 days to file an amended claim with sufficient documentation. Agreeing that the **proofs of claim were deficient**, the court granted the requested relief **but ruled that, if the debtors had instead requested disallowance of the claims, the court would have granted that relief** in the absence of a timely amendment to add

[4] Reference to PennyMac as only PennyMac presented themselves as holder of Secured Claim/ Secured Mortgage/ Valid Mortgage on behalf of PennyMac, Planet Home, MERS, CBC National Bank and all known and unknown sellers/buyer/holders of Note / Mortgage. [DISPUTED].

[5] PennyMac, Planet Home, MERS, CBC National Bank and all known and unknown sellers/buyer/holders of Note / Mortgage. [DISPUTED].

sufficient documentation in response to the objection. Id. at 817-18.

17.    The Henry court formulated the following rule, id. at
817-18:

> [A] creditor must, at a minimum, file with its proof
> of claim form, but in no event later than in
> response to a claims objection by the debtor, (i)
> a sufficient number of monthly account statements
> to show how the total amount asserted has been
> calculated, and (ii) a copy of the agreement
> authorizing the charges and fees included in the
> claim. **In the absence of that minimum evidentiary
> presentation, the creditor's claim should be
> disallowed.**
> **In Re Shank, 315 B.R. 799** (Bankr. N.D. Ga. 2004).

18.    Again, PennyMac Loan Services, LLC claimed in its **MOTION
[NOT A PROOF OF CLAIM]**:

> PennyMac Loan Services, LLC is the **holder of a secured
> claim** with a principal outstanding balance of
> **$205,175.37.** Said claim is secured by the real property
> located at 325 Plum Creek Dr, Schererville, IN 46375-
> 1166, and more particularly described in the mortgage,
> a copy of which is attached hereto and incorporated
> herein as Exhibit "A".
>
> The above-described mortgage was given to **secure a
> promissory note** dated March 15, 2012, by the **Mortgage
> Electronic Registration Systems, Inc.**, as nominee for
> **CBC National Bank** in the original principal sum of
> **$209,494.00.** A copy of the above-described note is
> attached hereto and incorporated herein as Exhibit "B".
> PennyMac Loan Services, LLC is the current holder of the
> promissory note and mortgage as is evidenced by the chain
> of assignments attached hereto and made a part thereof
> as Exhibit "C".

19.    Because the documentation attached to the MOTION [NOT A
PROOF OF CLAIM] appears to be lacking and in parts,

fabricated, Debtor on [Docket Entry 53] hearing held 9/16/19 requested[6] **information** as well as the **production of an original note and collateral file**.

20. A copy of the letter received from PennyMac attached hereto as **Exhibit "C"**.

    a. Its very surprising that PennyMac has not filed the letter / proof of Claim in Bankruptcy Court for reasons best known to them.

    b. Collateral file is still not provided, a chain of assignment is not provided, all "Note Allonge" are not proper and not dated as well as lacking in corporate resolution of persons signing them, if they were sold / bought price/invoice is not provided.

    c. Affidavit of Attorney is missing and not provided, **lacks foundation** in that the mentions **no personal knowledge to support the statements/ claim** made therein.

21. Debtors aver that to the extent documents have been fabricated for the purpose of enticing the Court's reliance, the same constitute fraud on the court.

---

[6] Debtor intention as correctly interpreted by Court is to ask PennyMac to Prove its Claim not just the Original Note as interpreted by PennyMac.

22.    There is no endorsement on the image of the Note despite there being ample room to accommodate an endorsement at last page of the alleged instrument.

23.    The alleged Allonges' is **NOT** signatures **notarized**. Debtors aver this to be a bogus document fabricated to entice the court's reliance.

24.    Furthermore, all the loan number differs from that in the prior so-called "Allonge" and from the document claimed to be a copy of a promissory note / mortgage.

25.    The Court should note that the Response and Motion by PennyMac **NEGLECTS** to include an **"Assignment of Mortgage"** which is essential to the Proof of Claim.

    a. The Debtors contend that this is a false assignment (if any) from "CBC BANK" TO "MERS" TO "SELENE FINANCE LP" TO "WHOMESOEVER", simply makes no logical sense when put into context with assignments located in the County Land Records and as per state Laws.

26.    The court should know that as NO Assignment has been presented with the RESPONSE[7] OR MOTION[3] it is not completely reflective of the chain of assignments of mortgage and note which are recorded with the County Land Records.

---

[7] EXHIBIT "C"

a. For the reasons stated below, the Debtors aver that each of the Note / Mortgage / Note Allonge are bogus documents, fabricated and represent the recording of fraudulent documents on the County Land Records.

27.   John Mileusnic hired "Joseph R Esquivel Jr." to investigate this "Title and Mortgage Fraud". Exhibit **"E"** is a copy of the **"Affidavit of Joseph R Esquivel Jr. for Title, Mortgage and Fraud Investigation"** which clearly details the fraud committed by PennyMac, MERS and others.

a. An Appeal is pending before Indiana Appeals Court as well as few Motions based on the investigation report which incorporates MERS Data, County data, Mortgage and Note, other exhibits as attached thereto to decide on FRAUD COMMITTED ON COURT.

28.   Exhibit **"D"** is a copy of the **"Voluntary Lien Report"** which mentions OTHER unknown / unrelated entities and PENNYMAC has failed to justify its ASSIGNMENT / OWNERSHIP.

29.   Under the terms of the Plan, in that the payments required by have not been made due to just cause as detailed above for such default, **as any payment will mean voluntarily accepting such fraud,** a reasoning PennyMac want to pursue by claiming that Debtor himself mentioned PennyMac in Ch 13 plan.

PENNYMAC / SELENE FINANCE AS SERVICING AGENT FOR CBC BANK NATIONAL BANK / FLAGSTAR BANK FSB / MERS **LACKS CONSTITUTIONAL STANDING** TO SEEK RELIEF IN A FEDERAL COURT

30.     The minimum constitutional requirements for standing in a federal court are: proof of injury in fact, causation and redressability. ***Valley Forge Christian College vs. Americans United for Separation of Church & State, Inc.*** 454 U.S. 464, 472 (1982).

   a. In its Motion PennyMac refers to itself as a "secured creditor." However, the Movant **has not shown that it has any stake in the ownership of the Note and Mortgage as either a holder or owner.** Any attempt to indicate itself as an owner of the loan has been by way of fraudulent and misleading documents.

31.     The debt is in **DISPUTE**:

   a. As to its validity

   b. As to ownership

   c. As to chain of "Assignments" and "Note Allonge"

   d. As to possession of Original Note and its production for validity by Bankruptcy Court.

   e. Even if assumed true, as to discrepancies in the Note and Mortgage

      i. Note allegedly sign by John and Jordan

ii. Mortgage allegedly signed by John, Jordan and Diane.

32.    John Mileusnic[8] is willing to deposit "Amount of default: $8,377.55, Amount due per month: $1685.51" in ESCROW or with Trustee with an understanding that this amount will NOT be released to Creditors unless this Court decides on the question of **Validation of Debt.**

Wherefore, John Mileusnic prays that these Ch 13 plan proceedings be NOT dismissed pursuant to Sec.1307 (c) of the Bankruptcy Code and that Trustees' final report of his receipts and disbursements in these proceedings may be kept pending, till the debt is **VALIDATED**.

**JOHN MILEUSNIC**

Debtor

---

[8] a very tired old man of 69 years, on mere Social Security of $1700 pm and trying to keep a roof over head

# CERTIFICATE OF SERVICE

I hereby certify that on September 25,2019, service of a true and complete copy of the above and foregoing pleading or paper is being made through the Court's ECF system upon the following:

1. **U.S. Trustee- Nancy J. Gargula**

   ustpregion10.soecf@usdoj.gov.com

2. **Paul R. Chael Chapter 13 Trustee** 401 West 84th Drive, Suite C Merrillville, IN 46410

   pchael13@ecf.epiqsystems.com          wjoyce@pchael13.com

   smichelle@pchael13.com

3. **SUSAN M. WOOLLEY** On behalf of Creditor Penny Mac Loan Services, LLC

   ndbkr@feiwellhannoy.com          SWOOLLEY@feiwellhannoy.com

   ecfnotices@feiwellhannoy.com

and upon the following by depositing the same in the United States mail, envelop es properly addressed to each of them and with sufficient first-class postage affixed.

4. **Capital One Auto Finance** 7933 Preston Road Plano, TX 75024

**Debtor- John Mileusnic
325 Plum Creek Drive
Schererville, IN 46375**

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| IN RE | ) | Chapter 13 |
| | ) | |
| JOHN MILEUSNIC | ) | CASE NO. 19-20831-JRA |
| | ) | |
| Debtor | ) | |
| | ) | |

### OBJECTION TO CONFIRMATION OF DEBTOR'S CHAPTER 13 PLAN

Comes now PennyMac Loan Services, LLC, by counsel and for its Objection to Confirmation of Debtor's Chapter 13 Plan, states as follows:

1.     Debtor filed this case on April 4, 2019.

2.     PennyMac Loan Services, LLC holds a validly perfected mortgage on the property located at 325 Plum Creek Dr, Schererville, IN 46375-1166.

3.     PennyMac Loan Services, LLC will be filing its Proof of Claim setting forth an approximate total pre-petition arrearage of $123,443.51 and an approximate total secured debt of $309,670.53. The Proof of Claim will further sets forth the current monthly mortgage payments due on the first day of each month of $1,585.51.

4.     The plan fails to provide for either the claim of creditor or treatment of the collateral securing creditor's claim.

WHEREFORE, PennyMac Loan Services, LLC, by counsel, respectfully requests that the

Confirmation of Debtor's Chapter 13 Plan as filed be denied and for all other relief just and

proper in the premises.

FEIWELL & HANNOY, P.C.

/s/ SUSAN M WOOLLEY
SUSAN M. WOOLLEY, Attorney No. 15000-64
Attorney for PennyMac Loan Services, LLC
8415 Allison Pointe Blvd., Suite 400
Indianapolis, IN 46250
(317) 237-2727
Email: SWOOLLEY@feiwellhannoy.com

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that the foregoing has been duly electronically

noticed or mailed via United States mail, first class, on May 28, 2019, to the following:

John Mileusnic
Debtor
325 Plum Creek Dr
Schererville, IN 46375-1166

Paul R. Chael
Trustee
401 West 84th Drive, Suite C
Merrillville, IN 46410

Nancy J. Gargula
U.S. Trustee
100 East Wayne Street, 5th Floor
South Bend, IN 46601-2349

/s/ SUSAN M WOOLLEY
SUSAN M. WOOLLEY
Attorney No. 15000-64

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

IN RE )  Chapter 13
)
JOHN MILEUSNIC )  CASE NO. 19-20831-JRA
)
Debtor )
)
)

**MOTION TO DISMISS**

Comes now PennyMac Loan Services, LLC, by counsel, and for its Motion Dismiss, would show the court as follows:

1.      On April 4, 2019, the above-named Debtor filed petition pursuant to Chapter 13 of the Bankruptcy Code and a meeting of creditors was scheduled by the Court for June 21, 2019.

2.      PennyMac Loan Services, LLC is the holder of a secured claim with a principal outstanding balance of $205,175.37. Said claim is secured by the real property located at 325 Plum Creek Dr, Schererville, IN 46375-1166, and more particularly described in the mortgage, a copy of which is attached hereto and incorporated herein as Exhibit "A".

3.      The above-described mortgage was given to secure a promissory note dated March 15, 2012, by the Mortgage Electronic Registration Systems, Inc., as nominee for CBC National Bank in the original principal sum of $209,494.00. A copy of the above-described note is attached hereto and incorporated herein as Exhibit "B". PennyMac Loan Services, LLC is the current holder of the promissory note and mortgage as is evidenced by the chain of assignments attached hereto and made a part thereof as Exhibit "C".

4.      As of the date of filing this Motion, the Debtor's Plan has not been confirmed.

5.      The Debtor failed to treat PennyMac Loan Services, LLC in the Plan.

6.      The Debtor has failed to make any post-petition payments to PennyMac Loan

Services.

7.      Upon information and belief, PennyMac Loan Services, LLC alleges that the pre-

Petition value of its collateral will decrease during Estate administration due to depreciation

caused by Debtor's use thereof. Therefore, PennyMac Loan Services, LLC is entitled to adequate

protection upon its interest in said collateral pursuant to U.S.C. §361.

8.      Because Debtor has not provided adequate protection sufficient to protect

PennyMac Loan Services, LLC's interest in its collateral from diminution during Estate

administration, PennyMac Loan Services, LLC alternatively requests that this Court grant its

Motion to Dismiss.

WHEREFORE, PennyMac Loan Services, LLC, a secured creditor, by counsel,

respectfully prays that the Court grant its Motion to Dismiss, pursuant to 11 U.S.C. §1307(c)(4)

and for all other relief just and proper in the premises.

FEIWELL & HANNOY, P.C.

/s/ SUSAN M WOOLLEY
SUSAN M. WOOLLEY, Attorney No. 15000-64
Attorney for PennyMac Loan Services, LLC
8415 Allison Pointe Blvd., Suite 400
Indianapolis, IN 46250
(317) 237-2727
Fax: (317) 237-2717
Email: SWOOLLEY@feiwellhannoy.com

CERTIFICATE OF SERVICE

The undersigned does hereby certify that the foregoing has been duly electronically

noticed or mailed via United States mail, first class, on August 7, 2019, to the following:

John Mileusnic
Debtor
325 Plum Creek Dr
Schererville, IN 46375-1166

Paul R. Chael
Trustee
401 West 84th Drive, Suite C
Merrillville, IN 46410

Nancy J. Gargula
U.S. Trustee
100 East Wayne Street, 5th Floor
South Bend, IN 46601-2349

/s/ SUSAN M WOOLLEY
SUSAN M. WOOLLEY
Attorney No. 15000-64

**NOTICE**

**FEIWELL & HANNOY, P.C. IS A DEBT COLLECTOR.**

# EXHIBIT C



# FH
## FEIWELL & HANNOY, P.C.
### ATTORNEYS AT LAW

8415 Allison Pointe Blvd., Suite 400
Indianapolis, IN 46250
(317) 237-2727

September 19, 2019

John Mileusnic
325 Plum Creek Drive
Schererville, IN 46375-1166

| | |
|---|---|
| Debtor: | John Mileusnic |
| Case Number: | 19-20831-JRA |
| Creditor: | PennyMac Loan Services, LLC |
| Our File Number: | 099754B02 |
| Property Address: | 325 Plum Creek Dr |
| | Schererville, IN 46375-1166 |

Dear Mr. Mileusnic:

Pursuant to the hearing held in this matter on September 16, 2019, in the United State Bankruptcy Court, enclosed please find copies of the **original** promissory note and mortgage held by Penny Mac Loan Services. Thank you.

Very truly yours,

SUSAN M. WOOLLEY

SMW:vw
enclosures

Loan No.: **8000022828**

# NOTE

Multistate

MIN 1008094-8000022828-3
MERS TELEPHONE: (888) 679-6377

FHA Case No.
156-1146970-703

**March 15, 2012**
[Date]

325 Plum Creek Dr., Schererville, **INDIANA** 46375
[Property Address]

### 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means
**CBC National Bank**
and its successors and assigns.

### 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of **Two Hundred Nine Thousand Four Hundred Ninety Four And 00/100** Dollars (U.S. **$209,494.00**), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of **Four percent (4.000%)** per year until the full amount of principal has been paid.

### 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4. MANNER OF PAYMENT

**(A) Time**
Borrower shall make a payment of principal and interest to Lender on the **FIRST** day of each month beginning on **May 1, 2012.** Any principal and interest remaining on the 1st day of **April, 2042,** will be due on that date, which is called the "Maturity Date."

**(B) Place**
Payment shall be made at **3010 Royal Boulevard South Ste 230, Alpharetta, GEORGIA 30022** or at such place as Lender may designate in writing by notice to Borrower.

**(C) Amount**
Each monthly payment of principal and interest will be in the amount of U.S. **$1,000.16**. This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

**(D) Allonge to this Note for payment adjustments**
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note.
[Check applicable box]

[ ] Graduated Payment Allonge      [ ] Growing Equity Allonge      [ ] Other [specify]

### 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

FHA Multistate Fixed Rate Note

10/95
1R (0809)

usfnote

Initials: 

503434417

6. **BORROWER'S FAILURE TO PAY**

    (A)    **Late Charge for Overdue Payments**

    If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen (15) calendar days after the payment is due, Lender may collect a late charge in the amount of Four percent (4.00%) of the overdue amount of each payment.

    (B)    **Default**

    If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

    (C)    **Payment of Costs and Expenses**

    If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

7. **WAIVERS**

    Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

8. **GIVING OF NOTICES**

    Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

    Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

9. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

    If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

503434417

Initials:

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ *John Mileusnic* _____ (Seal)     _____ *Jordan J Mileusnic* _____ (Seal)
John Mileusnic                    -Borrower    Jordan J Mileusnic                 -Borrower

**WITHOUT RECOURSE,
PAY TO THE ORDER OF
FLAGSTAR BANK, FSB
CBC NATIONAL BANK**
*Debra L Lange*
_____

Debra L. Lange
Mgr. Closing/Post Closing

PAY TO THE ORDER OF        Selene Finance LP
WITHOUT RECOURSE
FLAGSTAR BANK, FSB

BY: *Jean R Garrick*
    JEAN R. GARRICK
SENIOR VICE PRESIDENT

503434417

# Note Allonge

Loan Number: 0009348194          Prior Loan:     503434417

Borrower:     JOHN  MILEUSNIC

Co Borrower:   JORDAN J MILEUSNIC

Property Address:   325  PLUM CREEK DR , SCHERERVILLE , IN , 46375

Note Date:    3/15/2012

Loan Amount:   $209,494.00

Without Recourse, Pay to the order of:

PennyMac Loan Services, LLC

SELENE FINANCE LP

By:_____

Name:      Paul Waligura
Title:      Vice President
Date:      January 11, 2013

9348194
MILEUSNIC
SELN

KASOTA
798932-GNMA

7

# Allonge To Note

**Loan No:** 1005665925

**ALT Loan No:** 0000009348194

**Original Mortgagor:** JOHN  MILEUSNIC, JORDAN J MILEUSNIC

**Address:** 325 PLUM CREEK DR, SCHERERVILLE, IN, 46375

**Loan Amount:** $209,494.00

**Pay to the order of**

**Without Recourse**

**PennyMac Loan Services, LLC**

**Adriana Santillan**
**Authorized Representative**

Flagstar 503434417

2012 024364

STATE OF INDIANA
LAKE COUNTY
FILED FOR RECORD

2012 APR 11 AM 10: 49

MICHAEL ... AJMAN
RECORDER

Recordation Requested by:

**Return To:**
**Titlelogic**
124 6th Street S. Saint Petersburg, FL 33701

File # 0112104

Send Tax Notices to:
**John Mileusnic and Jordan J Mileusnic and
DIANE MILEUSNIC,
325 Plum Creek Dr.
Schererville, INDIANA 46375**

[Space Above This Line For Recording Data]

State of Indiana

# MORTGAGE

| FHA Case No. |
| --- |
| 156-1146970-703 |

MIN: 1008094-8000022828-3

MERS TELEPHONE: (888) 679-6377

THIS MORTGAGE ("Security Instrument") is given on **March 15, 2012**. The mortgagor is **John Mileusnic a married man, and Jordan J Mileusnic an unmarried man, and DIANE MILEUSNIC a married woman** whose address is **325 Plum Creek Dr., Schererville, INDIANA 46375** ("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS"). MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and MERS has a mailing address of P.O. Box 2026, Flint, MI 48501-2026 and a street address of 1901 E Voorhees Street, Suite C, Danville, IL 61834. The MERS telephone number is (888)679-MERS. **CBC National Bank**, which is organized and existing under the laws of **The United States of America**, and whose address is **3010 Royal Boulevard South Ste 230, Alpharetta, GEORGIA 30022** ("Lender"). Borrower owes Lender the principal sum of **Two Hundred Nine Thousand Four Hundred Ninety Four And 00/100** Dollars (U.S. **$209,494.00**). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **April 1, 2042**. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns to MERS, the following described property located in **LAKE** County, Indiana:

INDIANA -Single Family -FHA SECURITY INSTRUMENT -1/96 WITH MERS
Page 1 of 8

infmertd

Initials:

30.00
497C
42

**SEE EXHIBIT "A" ATTACHED HERETO AND BY THIS REFERENCE MADE A PART HEREOF.**

Parcel ID Number: 45 11 05 253 009 00 036
which has the address of **325 Plum Creek Dr.** [Street] **Schererville** [City], Indiana **46375** [Zip Code] ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.     **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2.     **Monthly Payments of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum of (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds".

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b) and (c) and any mortgage insurance premium installment that Lender has

INDIANA -Single Family -FHA SECURITY INSTRUMENT -1/96 WITH MERS
Page 2 of 8

Initials:

not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b) and (c).

    3.    **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

    First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

    Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

    Third, to interest due under the Note;

    Fourth, to amortization of the principal of the Note; and

    Fifth, to late charges due under the Note.

    4.    **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to Lender.

    In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

    In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

    5.    **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines this requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

    6.    **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the

INDIANA -Single Family -FHA SECURITY INSTRUMENT -1/96 WITH MERS
Page 3 of 8

Initials:

amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

      7.      **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

      If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

      Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

      Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to the Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

      8.      **Fees.** Lender may collect fees and charges authorized by the Secretary.

      9.      **Grounds for Acceleration of Debt.**

      **(a) Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

          (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

          (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

      **(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

          (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

          (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

      **(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

      **(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

      **(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the

Initials:

Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

        **10.**     **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

        **11.**     **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

        **12.**     **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

        **13.**     **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

        **14.**     **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

        **15.**     **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

        **16.**     **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

        Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

INDIANA -Single Family -FHA SECURITY INSTRUMENT -1/96 WITH MERS
Page 5 of 8

Initials:

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

20. **Waiver of Valuation and Appraisement.** Borrower waives all right of valuation and appraisement.

21. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

[ ] Condominium Rider        [ ] Growing Equity Rider        [ ] Other(s) [specify]
[ ] Planned Unit Development Rider    [ ] Graduated Payment Rider

Initials:

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____          *John Mileusnic* (Seal)
                                          John Mileusnic                    -Borrower

_____          *Jordan J. Mileusnic* (Seal)
                                          Jordan J Mileusnic                -Borrower

_____          *Diane Mileusnic* (Seal)
                                          DIANE MILEUSNIC                   -Borrower

This Mortgage was drafted by:

**CBC National Bank**
**3010 Royal Boulevard South Ste 230**
**Alpharetta, GEORGIA  30022**

I affirm, under the penalties for perjury, that I have taken reasonable care to redact each Social Security number in this document, unless required by law ( ____*Bethany Presnell*____ ).
                                                        *(name)* Bethany Presnell

# INDIVIDUAL ACKNOWLEDGMENT

STATE OF _Indiana_ )
) SS
COUNTY OF _Lake_ )

On this day before me, the undersigned Notary Public, personally appeared **John Mileusnic and Jordan J Mileusnic and**
**DIANE MILEUSNIC,**
to me known to be the individual(s) described in and who executed the Mortgage, and acknowledged that he/she/they signed the Mortgage as his/her/their free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this _15_ day of _march_ , _2012_ .

By _Angela Manfre_ Residing at _Dyer, IN_

Notary Public in and for the State of _Indiana_ My commission expires _09/27/2012_

```
ANGELA MANFRE
Notary Public - Seal
State Of Indiana
My Commission Expires Sep 27, 2012
```

INDIANA -Single Family -FHA SECURITY INSTRUMENT -1/96 WITH MERS
Page 8 of 8

Initials:

## **Exhibit A**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF LAKE, STATE OF Indiana, AND IS DESCRIBED AS FOLLOWS:

LOT 96, IN PLUM CREEK VILLAGE 6TH ADDITION, BLOCK 3, TO THE TOWN OF SCHERERVILLE, INDIANA, AS PER PLAT THEREOF, AS RECORDED IN PLAT BOOK 62, PAGE 26, IN THE OFFICE OF THE RECORDER OF LAKE COUNTY, INDIANA

Parcel ID: 45-11-05-253-009.000-036

Commonly known as 325 Plum Creek Drive, Schererville, IN 46375
However, by showing this address no additional coverage is provided

# EXHIBIT D

##  **Voluntary Liens Report**

www.homeinfomax.com

Prepared for: Mortgage Compliance Investigators　　　　　　January 19, 2015

| PROPERTY | |
|---|---|
| Location Address: 325 PLUM CREEK DR, SCHERERVILLE, IN 46375-1166. | County: LAKE |
| Owner Name: MILEUSNIC JOHN / MILEUSNIC JORDAN J | APN: 45-11-05-253-009.000-036 |

### SUMMARY OF RECORDS

| Record # | Date | Description | Document Number |
|---|---|---|---|
| 1 | 20140430 (Apr 30, 2014) | ASSIGNMENT OF MORTGAGE | 000000024121 |
| 2 | 20131118 (Nov 18, 2013) | ASSIGNMENT OF MORTGAGE | 000000085920 |
| 3 | 20120417 (Apr 17, 2012) | DEED OF RELEASE | 000000025386 |
| 4 | 20120411 (Apr 11, 2012) | FINANCE | 000000024364 |
| 5 | 20100106 (Jan 6, 2010) | DEED OF RELEASE | 000000000513 |
| 6 | 20091217 (Dec 17, 2009) | FINANCE | 000000083567 |
| 7 | 20091008 (Oct 8, 2009) | SALE | 68193 |
| same | 20091008 (Oct 8, 2009) | FINANCE | 000000068194 |
| 8 | | SALE | N/A |

| Record # 1: ASSIGNMENT | |
|---|---|
| Recording Date: 20140430 (Apr 30, 2014) | Borrower 1: MILEUSNIC JOHN |
| Recording Document No: 000000024121 | Borrower 2: MILEUSNIC JORDAN J |
| Document Type: ASSIGNMENT OF MORTGAGE | Borrower 3: MILEUSNIC DIANE |
| New Lender: GREEN PLANET SVCNG LLC | Borrower 4: |
| Previous Lender: SELENE FIN LP | Original Recording Date: 20120411 (Apr 11, 2012) |
| Vesting: / / MARRIED MAN | Original Document No: 24364 |

| Record # 2: ASSIGNMENT | |
|---|---|
| Recording Date: 20131118 (Nov 18, 2013) | Borrower 1: MILEUSNIC JOHN |
| Recording Document No: 000000085920 | Borrower 2: MILEUSNIC JORDAN J |

| Document Type: ASSIGNMENT OF MORTGAGE | Borrower 3: MILEUSNIC DIANE |
|---|---|
| New Lender: SELENE FIN LP | Borrower 4: |
| Previous Lender: CBC NATL BK | Original Recording Date: 20120315 (Mar 15, 2012) |
| Vesting: // MARRIED MAN | Original Document No: 24364 |

| Record # 3: RELEASE | |
|---|---|
| Recording Date: 20120417 (Apr 17, 2012) | Original Recording Date: 20091217 (Dec 17, 2009) |
| Recording Document No: 000000025386 | Original Document No: 000000083567 |
| Document Type: DEED OF RELEASE | |

| Record # 4: FINANCE | |
|---|---|
| Mortgage Recording Date: 20120411 (Apr 11, 2012) | Loan Amount: $209,494.00 |
| Mortgage Document No: 000000024364 | Down Payment: |
| Lender Name: CBC NAT'L BK | Mortgage Rate Type: |
| Borrower 1: MILEUSNIC JOHN | Mortgage Term: 30 YEARS |
| Borrower 2: MILEUSNIC JORDAN J | Mortgage Rate Percent: |
| Borrower 3: MILEUSNIC DIANE | Description: REFI |
| Borrower 4: | Title Insurance Company: TITLELOGIC |
| Vesting: // MARRIED MAN | |

| Record # 5: RELEASE | |
|---|---|
| Recording Date: 20100106 (Jan 6, 2010) | Original Recording Date: 20091008 (Oct 8, 2009) |
| Recording Document No: 000000000513 | Original Document No: 000000068194 |
| Document Type: DEED OF RELEASE | |

| Record # 6: FINANCE | |
|---|---|
| Mortgage Recording Date: 20091217 (Dec 17, 2009) | Loan Amount: $213,150.00 |
| Mortgage Document No: 000000083567 | Down Payment: |
| Lender Name: MIDWEST MTG CAP LLC | Mortgage Rate Type: |
| Borrower 1: MILEUSNIC JOHN | Mortgage Term: 30 YEARS |
| Borrower 2: MILEUSNIC JORDAN J | Mortgage Rate Percent: 5.250 |
| Borrower 3: MILEUSNIC DIANE | Description: REFI |
| Borrower 4: | Title Insurance Company: |

**Vesting: / JOINT TENANTS / MARRIED MAN**

---

### Record # 7: SALE & FINANCE

| | |
|---|---|
| **Sale Recording Date:** 20091008 (Oct 8, 2009) | **Sale Price:** |
| **Sale Date:** 20090529 (May 29, 2009) | **Sale Type:** |
| **Sale Document No:** 68193 | **Sale Stamp Amount:** |
| **Document Type:** QUIT CLAIM DEED | **Ownership Transfer:** Y |
| **Grantor:** MILEUSNIC JOHN & DIANE M | **Title Company:** NEW MILLENNIUM TITLE GRP |
| **Grantee:** MILEUSNIC JOHN | **Transfer Document No:** |
| **Last Sale:** N | |

| | |
|---|---|
| **Mortgage Recording Date:** 20091008 (Oct 8, 2009) | **Loan Amount:** $210,164.00 |
| **Mortgage Document No:** 000000068194 | **Down Payment:** |
| **Lender Name:** MIDWEST MTG CAP LLC | **Mortgage Rate Type:** |
| **Borrower 1:** MILEUSNIC JOHN | **Mortgage Term:** 30 YEARS |
| **Borrower 2:** MILEUSNIC JORDAN J | **Mortgage Rate Percent:** 5.750 |
| **Borrower 3:** MILEUSNIC DIANE | **Description:** NOMINAL |
| **Borrower 4:** | **Title Insurance Company:** |

**Vesting: // MARRIED WOMAN**

---

### Record # 8: SALE

| | |
|---|---|
| **Sale Recording Date:** | **Sale Price:** |
| **Sale Date:** 19871216 (Dec 16, 1987) | **Sale Type:** |
| **Sale Document No:** | **Sale Stamp Amount:** |
| **Document Type:** DEED (REG) | **Ownership Transfer:** |
| **Grantor:** OWNER RECORD | **Title Company:** |
| **Grantee:** MILEUSNIC JOHN & DIANE M | **Transfer Document No:** |
| **Last Sale:** Y | |

---

### LAKE COUNTY, IN RECORDING RANGE (reflected in report)

| Date | Sales | Mortgages | Assignments | Releases | Foreclosures |
|---|---|---|---|---|---|
| Start | 20040101 (Jan 1, 2004) | 20040101 (Jan 1, 2004) | 20040102 (Jan 2, 2004) | 20041018 (Oct 18, 2004) | 20040101 (Jan 1, 2004) |

| Through | 20141210 (Dec 10, 2014) | 20141210 (Dec 10, 2014) | 20141210 (Dec 10, 2014) | 20141210 (Dec 10, 2014) | 20141209 (Dec 9, 2014) |
|---------|---------|---------|---------|---------|---------|

Information contained in reports and documents is based on current and publicly available data originating primarily from local governmental sources. HomeInfoMax presents everything "as is" without any obligation to update, supplement or enhance any missing and/or defective data. No warranties, expressed or implied, are provided for the data herein, its use, or its interpretation. Presented information is deemed to be reliable; every effort has been made to ensure the accuracy, however HomeInfoMax assumes no responsibility for the accuracy or validity of the information.

# EXHIBIT E
# Affidavit of Joseph R Esquivel Jr. for Title, Mortgage and Fraud Investigation

After Recording Return to:
John & Diane & Jordan Mileusnic
325 Plum Creek Dr.
Schererville, IN 46375

## AFFIDAVIT OF JOSEPH R. ESQUIVEL JR.

I, Joseph R. Esquivel Jr, declare as follows:

1. I am over the age of 18 years and qualified to make this affidavit.

2. I am a licensed private investigator of in the State of Texas, License # A18306.

3. I make this affidavit based on my own personal knowledge.

4. I make this affidavit in support of *Mortgage Compliance Investigators'* Chain Of Title Analysis & Mortgage Fraud Investigation prepared for John & Diane & Jordan Mileusnic regarding the Security Instrument and the real property located at 325 Plum Creek Dr., Schererville, IN 46375, as referenced in the Lake County Record.

5. I have no direct or indirect interest in the outcome of the case at bar for which I am offering my observations.

6. I have personal knowledge and experience in the topic areas related to the securitization of mortgage loans, real property law, Uniform Commercial Code practices, predatory lending practices, assignment and assumption of securitized loans, creation of trusts under deeds of trust, pooling and servicing agreements, issuance of asset-backed securities and specifically mortgage-backed securities by special purpose vehicles in which an entity is named as trustee for holders of certificates of mortgage backed securities, the foreclosure process of securitized and non-securitized residential mortgages in both judicial and non-judicial states, and the various forms of foreclosure-related fraud.

*Page 1 of 5 Factual Affidavit of Joseph R. Esquivel Jr for- John & Diane & Jordan Mileusnic – 325 Plum Creek Dr.,*

**Exhibit 10 Affidavit of**     **EXHIBIT E**     **Page 60 of 175**
**Joseph R Esquivel Jr. for Title Mortgage and Fraud Investigation**

7. I perform my research through the viewing of actual business records and Corporate/Trust Documents.

8. I use professional resources to view these records and documents.

9. I have the training, knowledge and experience to perform these searches and understand the meaning of these records and documents with very reliable accuracy.

10. I am available for court appearances, in person or via telephone for further clarification or explanation of the information provided herein, or for cross examination if necessary.

11. My research through professional services and the viewing of actual business records and Corporate/Trust Documents, determined that an interest in the John & Diane & Jordan Mileusnic Mortgage Loan Instrument was sold sometime shortly after March 15, 2012 to multiple classes of the Ginnie Mae REMIC Trust 2012-048.

   a. Ginnie Mae is also confirmed as the investor by going to the website for Mortgage Electronic Registration Systems, Inc. https://www.mers-servicerid.org/sis/index.jsp (See Exhibit "E" attached within)

12. I have looked at a Mortgage of John & Diane & Jordan Mileusnic, dated March 15, 2012 and filed in the Official Records of the Lake County Recorder's Office on April 11, 2012 as ins# 2012-024364, regarding a loan for $209,494. The Original Lender of the March 15, 2012 Mileusnic loan is CBC National Bank. (See Exhibit "A" attached within)

   a. The multiple classes of the Ginnie Mae REMIC Trust 2012-048 are not named in any way to the John & Diane & Jordan Mileusnic Mortgage

   b. Servicer is not named or referenced in any way on the John & Diane & Jordan Mileusnic Mortgage

   c. Seller is not named or referenced in any way on the John & Diane & Jordan Mileusnic Mortgage

   d. Depositor is not named or referenced in any way on the John & Diane & Jordan Mileusnic Mortgage

   e. Trustee is not named or referenced in any way on the John & Diane & Jordan Mileusnic Mortgage

13. I have looked at the Lake County Record relating to the John & Diane & Jordan Mileusnic Mortgage dated March 15, 2012. The Lake County Record shows an "Assignment of Mortgage", dated November 01, 2013 and filed in the Official Records of the Lake County Recorder's Office on November 18, 2013 as ins# 2013-085920, signed by Jason Burr as Assistant Secretary and notarized November 01, 2013 by Leticia M. Turner, Texas Notary, where MERS as nominee for CBC National Bank, its successors and assigns grants, assigns, and transfers to Selene Finance LP, its successors and assigns. (See Exhibit "B" attached within).

14. I have looked at the Lake County Record relating to the John & Diane & Jordan Mileusnic Mortgage dated March 15, 2012. The Lake County Record shows an "Assignment of Mortgage", dated April 23, 2014 and filed in the Official Records of the Lake County Recorder's Office on April 30, 2014 as ins# 2014-024121, signed by Jason Burr as Assistant Vice President and notarized April 23, 2014 by Leticia M. Turner, Texas Notary, where Selene Finance LP grants, assigns, and transfers to Green Planet Servicing LLC, its successors and assigns. (See Exhibit "C" attached within).

15. I have looked at the Lake County Record relating to the John & Diane & Jordan Mileusnic Mortgage dated March 15, 2012. The Lake County Record shows no record of a release e of the Mortgage as required in covenant 19 of the Mortgage which states "**Release,** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Lender may charge Borrower a fee for releasing this Security Instrument, but

**EXHIBIT E**

only if the fee is paid to a third for services rendered and the charging of the fee is permitted under Applicable Law". This has not happened.

16. I have looked at a copy of the MERS Procedures Manual, Release 19.0, dated June 14, 2010, and MERS Residential Marketing Kit, Terms And Conditions: (see Exhibit "D" attached within)

    a. It is stated in the MERS Procedures Manual, Release 19.0, dated June 14, 2010:

        Page 63 – Transfer of Beneficial Rights to Member Investors, Overview:

        **"Although MERS tracks changes in ownership of the beneficial rights for loans registered on the MERS System, MERS cannot transfer the beneficial rights to the debt. The debt can only be transferred by properly endorsing the promissory note to the transferee."** (emphasis added)

        It is stated in the MERS Residential Marketing Kit, Terms And Conditions:

        2. …MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial owner or owners thereof from time to time. **MERS shall have no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans. MERS agrees not to assert any rights** (other than rights specified in the Governing Documents) with respect to such mortgage loans or mortgaged properties. References herein to "mortgage(s)" and "mortgagee of record" shall include deed(s) of trust and beneficiary under a deed of trust and any other form of security instrument under applicable state law. (emphasis added)

        6. **MERS and the Member agree that: (i) the MERS System is not a vehicle for creating or transferring beneficial interests in mortgage loans**… (emphasis added)

17. I have looked at a Copy of a QUITCLAIM Deed showing legal title to property with APN NO: 45-11-05-253-009.000-036 is in the name of John & Diane & Jordan Mileusnic (see Exhibit "F" attached within)

# Affidavit of Joseph R Esquivel Jr. for Title, Mortgage and Fraud Investigation

The above statements are affirmed by me under penalty of perjury under the laws of the State of Texas to be true and correct to the best of my knowledge and belief, are based on my own personal knowledge, and I am competent to make these statements.

FURTHER THE AFFIANT SAYETH NAUGHT

By _Joseph R Esquivel J_ Executed on _2/17/2015_

Joseph R Esquivel, Jr.

Private Investigator License # A18306

Mortgage Compliance Investigators

STATE OF TEXAS )

)

COUNTY OF TRAVIS )

Subscribed and sworn before me, _Jessica Rangel_

Notary Public, on this _17_ day of _February_, 2015 by
_Joseph Esquivel_, Proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me. WITNESS my hand and official seal.

_Jessica Rangel_
Notary Public



JESSICA RANGEL
Notary Public, State of Texas
My Commission Expires
February 06, 2016

## EXHIBIT E

# EXHIBIT F

# United States Bankruptcy Court
## Northern District of Indiana

In re  John Mileusnic _____     Case No.  19-20831-JRA _____

_____Debtor(s)_____     Chapter.  13 _____

## CERTIFICATE OF MAILING

The undersigned hereby certifies that a true copy of the following document(s):

was(were) mailed to all persons in interest at the addresses set forth in the exhibit which is attached hereto, electronically or by first class mail, postage prepaid, on .

8/26/2019 _____

_____
Jorden Mileusnic
325 Plum Creek Drive
Schererville, IN 46375

SUSAN M. WOOLLEY
8415 Allison Pointe Blvd. Suite 400
Indianapolis, IN 46250
Phone: (317) 237-2727
Email: SWOOLLEY@feiwellhanноy.com

Penny Mac Loan Services, LLC
P.O. Box 514387
Los Angeles, CA 90051

Capital One Auto Finance
7933 Preston Road
Plano, TX 75024

United States Bankruptcy Court
Northern District of Indiana

In re:                                                    Case No. 19-20831-jra
John Mileusnic                                            Chapter 13
        Debtor

# CERTIFICATE OF NOTICE

District/off: 0755-2        User: admin          Page 1 of 1           Date Rcvd: Aug 05, 2019
                            Form ID: 293         Total Noticed: 1

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
Aug 07, 2019.
db             +John Mileusnic,    325 Plum Creek Drive,    Schererville, IN 46375-1166

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
NONE.                                                                                      TOTAL: 0

        ***** BYPASSED RECIPIENTS *****
NONE.                                                                                      TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

Transmission times for electronic delivery are Eastern Time zone.


**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Aug 07, 2019                          Signature:  /s/Joseph Speetjens

---

# CM/ECF NOTICE OF ELECTRONIC FILING

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email)
system on August 5, 2019 at the address(es) listed below:
              Nancy J. Gargula    USTPRegion10.SO.ECF@usdoj.gov
              Paul R. Chael    on behalf of Trustee Paul R. Chael aimee@pchael13.com,
              pchael13@ecf.epiqsystems.com;wjoyce@pchael13.com;smichelle@pchael13.com
              Paul R. Chael    aimee@pchael13.com,
              pchael13@ecf.epiqsystems.com;wjoyce@pchael13.com;smichelle@pchael13.com
              Susan M. Woolley(AM)    on behalf of Creditor    PennyMac Loan Services, LLC
              ecfnotices@feiwellhannoy.com
                                                                            TOTAL: 4

# UNITED STATES BANKRUPTCY COURT
## Northern District of Indiana
## Hammond Division

In Re: Debtor(s) (name(s) and address)
John Mileusnic
xxx–xx–1703
325 Plum Creek Drive
Schererville, IN 46375

)
)
)
) Case Number: 19–20831–jra
)
)
)
)
)
) Chapter: 13
)
)
)
)
)

# NOTICE OF DOCKET ENTRY

On August 5, 2019 , the following entry was made on the docket in this case:

Docket Entry: Confirmation held 8/5/19(related document(s)16 Chapter 13 Plan filed by John Mileusnic). APPEARANCES: Attorney Godshalk on behalf of Trustee. Trustee reports objections/issues that preclude confirmation. The foregoing is herby reset to September 16, 2019 at 9:00 a.m. SO ORDERED. (kdr)

Christopher M. DeToro
Clerk, United States Bankruptcy Court
5400 Federal Plaza
Hammond, Indiana 46320

Document No. 32 – 16